UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW MEXICO

In re:

TIMOTHY DOMENICO,

Debtor.                                    No. 7-06-12430 SL

## MEMORANDUM OPINION AND ORDER TO DISMISS CASE
## IF DEBTOR DOES NOT PAY FILING FEE
## FROM PREVIOUS CASE

This matter comes before the Court on the Order to Show
Cause Why Case Should Not Be Dismissed for Failure to Pay
Previous Filing Fee (doc 9).  For the reasons set forth below,
the Court requires the Debtor to pay the filing fee from a
previous case on pain of dismissal of this case.[1]

**Background**

Debtor filed a chapter 13 petition in 2005 (No. 7-05-17053
SL, United States Bankruptcy Court, District of New Mexico).[2]
The 2005 case was dismissed for failure to pay the filing fee on
January 3, 2006 (doc 28).  The Debtor still owes $144.  On
December 27, 2006 Debtor then filed, and paid the full filing fee
for, the instant case.  On January 4, 2007, the Court (through
the Clerk's office) issued its Order to Show Cause (doc 9),

---

[1] The Court has subject matter and personal jurisdiction
pursuant to 28 U.S.C. §§1334 and 157(b); this is a core
proceeding pursuant to 28 U.S.C. §157(b)(2)(I) and (J); and these
are findings of fact and conclusions of law as may be required by
Rule 7052 F.R.B.P.

[2] For some reason, the Order to Show Cause listed the prior
case as a chapter 7 case rather than a chapter 13 case; the
mistake makes no difference.

conducted a preliminary hearing on January 22, 2007, and then took the matter under advisement. The Order to Show Cause was noticed to the Debtor, Debtor's attorney, case trustee and United States Trustee. Only the Debtor's attorney appeared at the hearing.

**Analysis**

11 U.S.C. §707(a)(2) provides that the Court may dismiss a chapter 7 case for "nonpayment of any fees or charges required under chapter 123 of title 28...." Chapter 123 of title 28 includes §1930, which sets out the filing fees required to be paid for filing petitions under various chapters of the Code. The identical language appears in the dismissal or conversion provisions of chapters 12 and 13 (§§1208(c)(2) and 1307(c)(2)), and the almost identical language appears in the dismissal or conversion provisions of chapter 11 (§1112(b)(4)(K) - "nonpayment of any fees...." changed to "failure to pay any fees...." by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005[3]). The question therefore is, did Congress mean to require, on pain of dismissal or conversion, the payment of any fee arising in the currently filed case, or any chapter 123 fee remaining unpaid from any federal court activity?

> The task of resolving the dispute over the meaning of [the language in question] begins where all such

_____

[3] Pub. L. No. 109-08, 119 Stat. 23 ("BAPCPA").

Case 06-12430-s13   Doc 13   Filed 03/02/07   Entered 03/02/07 11:19:12 Page 2 of 12

inquiries must begin: with the language of the statute
itself.

United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241

(1989). (Citations and internal punctuation omitted.)  But see

Marrama v. Citizens Bank of Massachusetts (No. 05-996) 549 U.S.

___, 2007 WL 517340 (2007)(majority rejects dissent's "plain

language" textual analysis interpreting §706(a) and (d)).

     The use of the term "any" in the statute strongly suggests

it is not limited in its application; in this context, it can

only be a synonym for "all".[4]  "[W]e assume that the legislative

purpose is expressed by the ordinary meaning of the words used."

American Tobacco Company v. Patterson, 456 U.S. 63, 68 (1982)

(interpreting provision of Civil Rights Act of 1964; citation and

internal punctuation omitted.); see also Pioneer Investment

Services Co. v. Brunswick Associates Limited Partnership, 507

U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient

indication to the contrary, that Congress intends the words in

its enactments to carry their ordinary, contemporary, common

meaning.").  (Internal punctuation and citation omitted.)

     Certainly nothing in the statute explicitly limits the term

"any fee" to the current case.  Had Congress meant to limit the

language to fees required for the current case, it could easily

---

     [4] "ALL - used to indicate a maximum or whole <needs ~ help
he can get>."  Webster's Ninth New Collegiate Dictionary 93
(1991).

Case 06-12430-s13   Doc 13   Filed 03/02/07   Entered 03/02/07 11:19:12 Page 3 of 12

have used qualifying language such as "nonpayment of any fees or charges arising in the case required under chapter 123...."[5] Since it did not, the argument that the term "any fee" is limited only to the current case must therefore rely on implication.

Such an argument by implication is certainly not implausible; "[s]tatutory construction...is a holistic endeavor." United Savings Assoc. of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 371 (1988). Indeed, the two cases which the Court has found on this issue rely in part on the language surrounding the phrase at issue to arrive at a conclusion opposite to that reached by this Court. In re Machdanz, Not Reported in B.R., 1994 WL 740457 (Bankr. D. Idaho 1994), and In re Howard, 333 B.R. 826 (Bankr. W.D. Wis. 2005), both reasoned that because the circumstances described in the same sections to justify dismissal or conversion all referred to

---

[5] Compare Rule 4004(c)(1)(G) F.R.B.P. (Grant or Denial of Discharge), which provides in relevant part as follows:
> In a chapter 7 case...the court shall forthwith grant the discharge unless...the debtor has not paid in full the filing fee prescribed by 28 U.S.C. §1930(a) and any other fee prescribed by the Judicial Conference of the United States under 28 U.S.C. §1930(b) that is payable to the clerk upon commencement of a case under the Code, unless the court has waived the fees under 28 U.S.C. § 1930(f)....

The rule is clearly limited to the filing fees for a currently filed case. It speaks of "the" filing fee rather than "any" filing fee. It addresses only the filing fee and "any other fee...payable to the clerk upon commencement of a case under the Code" (rather than non-filing fees). And it allows for the waiver of the fees under §1930(f), which itself speaks of filing and related fees.

events (or, perhaps more accurately, non-events) occurring in the currently filed case, it would be sensible to similarly limit the application of the "any fee" terminology. However, part of the problem with this argument is that it would not make sense to dismiss the current case for things that the debtor did nor did not do in a previous case such as grossly mismanaging the previous case, unreasonably delaying it, failing to timely file and confirm a plan, defaulting on a confirmed plan in the previous case, etc. All those issues would have been already dealt with in the previous case. On the other hand, the nonpayment of fees in a case is a circumstance that could carry into future cases, as it has in this case.

The other argument relied on by these courts stems from the ramifications of not limiting "any fee" to the current case.

> Chapter 123 provides not only for fees required for a case filed under Title 11, but also fees for cases filed in virtually every other federal court including, the Supreme Court, the Courts of Appeals, Admiralty and Maritime Courts, and the Court of Claims. 28 U.S.C. §§1911, 1913, 1914, 1925. Chapter 123 also provides for the assessment of civil fines and forfeitures. 28 U.S.C. §1918.

In re Machdanz, at *1. The Howard court described this as a "strange" result. 333 B.R. at 828. And there is justification for that adjective. For example, an additional sum even as small as $144 could prevent a debtor from filing and pursuing another case, a fact effectively recognized by the provisions of BAPCPA which permit the Court to waive the filing fee for the most

Case 06-12430-s13   Doc 13   Filed 03/02/07   Entered 03/02/07 11:19:12 Page 5 of 12

destitute of debtors.  28 U.S.C. §1930(f).[6]  So, although the

amounts at issue will usually be relatively small[7], they will

still be of no small moment to some debtors; that is, there will

be some debtors who, for lack of a few more dollars in their

pockets, will be unable to avoid dismissal of their chapter 7

cases.[8]  Nevertheless, "as long as the statutory scheme is

coherent and consistent, there generally is no need for a court

to inquire beyond the plain language of the statute."  United

States v. Ron Pair Enterprises, Inc., 489 U.S. at 240-41.

─────────────

[6] 28 U.S.C. §1930(f)(1) provides in part as follows:
(1) Under the procedures prescribed by the Judicial
Conference of the United States, the district court or
the bankruptcy court may waive the filing fee in a case
under chapter 7 of title 11 for an individual if the
court determines that such individual...is unable to
pay that fee in installments.  For purposes of this
paragraph, the term "filing fee" means the filing fee
required by subsection (a), or any other fee prescribed
by the Judicial Conference under subsections (b)( and
(c) that is payable to the clerk upon the commencement
of a case under chapter 7.
(2) The district court or the bankruptcy court may
waive for such debtors other fees prescribed under
subsections (b) and (c).
As of the date of this decision, the Judicial Conference has not
prescribed any procedures for the waiver of fees owed from prior
cases.  Prescribing such procedures would presumably do away with
the issue of interpreting the statute, together with (depending
on the procedure) the dire consequences that will be visited on
some debtors.

[7] In fact, an unpaid fine or forfeiture could be
substantial.

[8] This Court has presided over cases in which Schedule I
discloses literally no income and Schedules A and B disclose
virtually no assets with which to pay more than a single digit
fee.

That Congress might condition a debtor's continuing in
bankruptcy on paying all fees, fines and forfeitures owed to the
United States is not especially surprising.  For example,
Congress was at pains to ensure that a prisoner cannot use a
bankruptcy filing to discharge

> a fee imposed on a prisoner by any court for the filing
> of a case, motion, complaint, or appeal, or for other
> costs and expenses assessed with respect to such
> filing, regardless of an assertion of poverty by the
> debtor...or the debtor's status as a prisoner....

11 U.S.C. §523(a)(17) (as clarified by BAPCPA).  And in a
parallel fashion, courts are careful to interpret statutes in a
way that preserves the public fisc.[9]  See Ardestani v.
Immigration and Naturalization Service, 502 U.S. 129, 147 (1991)
(Blackmun, J., dissenting) (canon of statutory interpretation
that waivers of sovereign immunity are strictly construed has as
one of its purposes to protect the public fisc).

The legislative history of §523(a)(17) does suggest an
argument contrary to this Court's conclusion.  Prior to BAPCPA,
several decisions had interpreted the earlier version of

---

[9] The Court's decision in this case is driven only by its
application of the rules of statutory interpretation, and not at
all by the current difficulties occasioned by the severe drop in
bankruptcy filing fees which in years have provided a significant
source of financial support for the federal judiciary as a whole.
For example, cumulative bankruptcy court collections for FY 2005
were $236,537,316 (with September 2005 figures slightly higher
than would be historically indicated), and the Salaries and
Expenses appropriation for the same period was $4,125,000,000.
(Figures provided by the staff of the Administrative Office of
the United States Courts.)

Case 06-12430-s13   Doc 13   Filed 03/02/07   Entered 03/02/07 11:19:12 Page 7 of 12

§523(a)(17) (amended version quoted above) as applying only to prisoners even though the statute as then written was not explicitly limited to prisoners.[10]  E.g., Hough v. Fry (In re Hough), 239 B.R. 412 (9th Cir. B.A.P. 1999) (relying on various statutory rules of interpretation and on where the amending language was located in the original statute).  By adding the words "on a prisoner", Congress used BAPCPA to make clear its original intent that §523(a)(17) was addressed only to prisoners.

Applying that approach to this problem, the argument could be made that when Congress passed BAPCPA, it had the opportunity to correct what it might have considered to be incorrect interpretations of the fee statutes, and because it did not do so, it was therefore satisfied with the narrow interpretation of the statute.  Specifically, Machdanz had been decided in 1994, and it had interpreted §1307(c)(2) (the identical provision in chapter 13) as applying only to a current case.  Thus one could argue that by not amending the specific wording at issue in §§707(a)(2), 1112(b)(4)(K), 1208(c)(2) and 1307(c)(2)), Congress essentially declared itself satisfied with the status quo.  See

---

[10] Section 523(a)(17) was added to the Bankruptcy Code by the Prison Litigation Reform Act of 1995 (Pub. L. No. 104-134, 110 Stat. 1321) §804(b)(1996)) and provided in relevant part as follows:

> (17) for a fee imposed by a court for the filing of a case, motion, complaint, or appeal, or for other costs and expenses assessed with respect to such filing, regardless of an assertion of poverty by the debtor...or the debtor's status as a prisoner....

<u>Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran</u>, 456 U.S. 353, 382 n.66 (1982), citing <u>Lorillard v. Pons</u>, 434 U.S. 575, 580-581 (1978):

> Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change.  So too, where, as here, Congress adopts a new law incorporating sections of a prior law, Congress normally can be presumed to have had knowledge of the interpretation given to the incorporated law, at least insofar as it affects the new statute.

(Citations omitted.)

The grounds for that argument do not exist in this case.  First, <u>Machdanz</u>, although available on Westlaw, was not published in major "hard copy" reporters such as West's Bankruptcy Reporter or Matthew Bender's Bankruptcy Cases.  Second, <u>Howard</u>, which was published in hard copy, is dated October 31, 2005, and would have appeared in print sometime after that, perhaps a year or so after Congress passed BAPCPA in February 2005.  Third, there was nothing in the National Bankruptcy Review Commission Final Report[11] that addressed this issue.  Thus, there is no basis for assuming that Congress was even aware of this alleged statutory ambiguity.

> In any event, canons of construction are no more than rules of thumb that help courts determine the meaning of legislation, and in interpreting a statute a court should always turn first to one, cardinal canon before all other.  We have stated time and again that courts

---

[11] Reprinted in A. Resnick and H. Sommer, Collier on Bankruptcy, App. Pt. 44-1 (Vol. G) (15th Ed. Rev. 2006).

Page 9 of  12

must presume that a legislature says in a statue what
it means and means in a statute what it says there.

Connecticut National Bank v. Germain, 503 U.S. 249, 253-54

(1992).

One other issue remains to be considered.  The

Administrative Office of the United States Court's Bankruptcy Fee

Compendium III[12] (April, 2006) provides on pp. 21-22 in part as

follows:

> **The Court's Claim in a Subsequent Bankruptcy.** Once the
> debtor with unpaid fees files a new petition, the clerk
> must stop all action to collect the unpaid fees; the
> court is merely an unsecured creditor in the new case.
> Nevertheless, the clerk may have no authority to file a
> proof of claim in the new case.  Only the Department of
> Justice has authority to represent the United States in
> litigation, and whether filing a proof of claim rises
> to litigation or remains a ministerial collection
> action is open to interpretation.  Clerks should confer
> with their district's United States Attorney, and they
> should coordinate their efforts to assert the court's
> claim with that office.

(Footnotes omitted.)

Section 707(a) lists nonpayment of fees as a ground on which

the court may dismiss a case sua sponte.  The statute also

prescribes what the remedy is: dismissal, rather than filing a

proof of claim.  There is thus no need to refer this matter to

the United States Attorney for resolution.

**Conclusion and Order**

------------------------------

[12]Available at http://www.flsb.uscourts.gov/web_folder/
Administrative_Office_Bankruptcy_Fee_Compendium.pdf (last visited
February 22, 2007).

The Court therefore concludes that the phrase "any fees or charges required under chapter 123 of title 28" is not limited to those fees or charges arising out of the Debtor's current case, but in this instance also includes the $144 remaining unpaid from his previous chapter 13 case. Given that conclusion Debtor should now be afforded the opportunity to make the payment in order to continue his current case. For that reason, the Court will conduct a hearing to confirm with Debtor what his intention is. Since this case is a chapter 7 case, the debt will have to be paid relatively promptly.[13]

IT IS THEREFORE ORDERED as follows:

1. The Court will conduct a hearing on March 12, 2007 at 9:30 a.m. in the Hearing Room, Room 13102, 13th Floor, Dennis Chavez Federal Building and United State Courthouse, 500 Gold Avenue, SW, Albuquerque, NM 87102 at which the Debtor must appear in person or by telephone*, and at which the Court will set a deadline for payment of the $144; and

2. The Court shall enter an order dismissing this case unless Debtor pays the $144 remaining due from the previous bankruptcy case by the deadline to be set by the Court.

_____
Honorable James S. Starzynski
United States Bankruptcy Judge

---

[13] Whether the payment could be made over a period of time in a chapter 11, 12 or 13 case, as part of a plan, is not before the Court in this case.

Case 06-12430-s13    Doc 13    Filed 03/02/07    Entered 03/02/07 11:19:12 Page 11 of 12

copies to:

Timothy A Domenico
1100 Olive St.
Denver, CO 80220

William P Gordon
Attorney for Debtor
2501 Yale Blvd SE Ste 204
Albuquerque, NM 87106-4357

Kieran F. Ryan
Chapter 7 Trustee
PO Box 26
Las Cruces, NM 88004-0026

United States Trustee
PO Box 608
Albuquerque, NM 87103-0608

Kelley L. Skehen
Chapter 13 Trustee
625 Silver Avenue SW
Suite 350
Albuquerque, NM 87102-3111

United States Attorney
PO Box 607
Albuquerque, NM 87103


* Counsel/parties may appear by telephone if a written request is
received in the Court's Chambers by 5:00 P.M. of the business day
prior to the hearing.  Requests to appear by telephone may be
faxed to (505) 348-2432 (this fax number may be used only for
this purpose), or may be sent by e-mail only to Judge
Starzynski's chambers at starzynski@nmcourt.fed.us   The e-mail
**must** have a subject heading that includes the word "telephone",
correctly spelled.  The text of the request must contain your
name, the case name, date and time of hearing, and the number at
which you can be reached when we call you for the hearing.  Do
not send your request to the Clerk's office and do not file your
request as a pleading.